IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 786, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19 C 6317 |
| ) | |
| RICHARD BLEVINS, et al., ) | Judge Joan H. Lefkow |
| ) | |
| Defendants. ) | |

## **OPINION AND ORDER**

On September 23, 2019, Teamsters Local Union No. 786 ("Local 786") filed suit against the trustees of four multiemployer benefit trust funds for breach of fiduciary duty in violation of the Employee Retirement Security Act ("ERISA"). (Dkt. 1.) On October 25, 2019, Local 786 amended its complaint and asked the court to enter a preliminary injunction. (Dkts. 10, 11.) In response, on November 27, 2019, defendants moved to dismiss the amended complaint, arguing that Local 786 had failed to state a claim. (Dkt. 19.) For the reasons stated below, defendants' motion to dismiss is denied, and Local 786's motion for preliminary injunction is granted.[1]

## **BACKGROUND**[2]

**I.    The Parties**

Plaintiff Local 786 is an employee organization that has represented employees in the building materials, lumber, and other industries in the Chicagoland area. (Dkt. 10 ¶ 3, 9.)

---

[1] The court has jurisdiction under 29 U.S.C. § 1132(e)(1) and venue is proper under 29 U.S.C. § 1132(e)(2).

[2] The following statement of facts is taken from the well-pleaded allegations in Local 786's amended complaint, which are presumed to be true for purposes of the motion to dismiss. The facts essential to Local 786's breach of fiduciary duty claim also are uncontested for purposes of the motion for a preliminary injunction.

1

Defendants Richard Blevins, Steven Fisher, Kevin Jarchow, Dave Mashek, Martin Ozinga, IV, Mike Philipp, Edward Rizzo, Ronald Sandack, Steven Warnke, and Michael Yauger are the trustees of the following four multiemployer trust benefit funds: the Local Union 786 Building Material Pension Fund; the Building Material Chauffeurs, Teamsters & Helpers Welfare Fund of Chicago; the Lumber Employees Local 786 Retirement Fund; and the Local 786 Union Severance Trust Fund (collectively, the "786 Funds"). (*Id.* ¶ 3, 6-8.) Blevins, Fisher, Rizzo, and Yauger are the union trustees for each of the funds. (*Id.* ¶ 6-8.)

## II. The Facts

Local 786 is bound by its own by-laws and by the constitution of the International Brotherhood of Teamsters ("IBT"), of which it is an affiliate. (*Id.* ¶ 10.) Through trust agreements, Local 786 and participating employers created and maintain the four multiemployer trust benefit funds. (*Id.* ¶ 11.) Each trust agreement specifies a procedure for the appointment and removal of union trustees. (*Id.* ¶ 12.)

Prior to February 28, 2019, the relevant trust agreements provided that Local 786's executive board would appoint and remove union trustees. *Id*. On February 28, 2019, however, the defendants adopted amendments to the trust agreements for all four funds, which give the incumbent union trustees the power to appoint and remove themselves. (*Id.* ¶ 14.) A representative example of the amended provisions is as follows[3]:

> Any Employer Trustee may be removed, with or without cause, at any time, by a majority of the remaining Employer Trustees. Any Union Trustee may be removed, with or without cause, at any time, by a majority of the remaining Union Trustees. The Trustees may initiate action to cause the removal of a Trustee who violates the requirements of this Trust or of a law applicable to the Trust; however, the right to actually remove an Employer Trustee lies solely with the other Employer Trustees and the right to actually remove a Union Trustee lies solely with the other Union Trustees.

---

[3] Each amended provision is functionally identical. (Dkt. 10-6 §§ 2.5 & 2.6; dkt. 10-7 Part 3 art. IV; dkt. 10-8 §§ 2.5 & 2.6; dkt. 10-9 §§ 2.5 & 2.6.)

> […]
> If any Employer Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Employer Trustee shall be appointed promptly by action of the majority of Employer Trustees. If any Union Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Union Trustee shall be appointed promptly by action of the majority of Union Trustees. …. It is the intention hereof that the Fund shall at all times be administered by an equal number of Employer Trustees and Union Trustees.

(Dkt. 10-7 at 15.)

On July 22, 2019, the IBT placed Local 786 into trusteeship and appointed Dennis Morgan as IBT Trustee. (*Id.* ¶ 16.) Pursuant to the terms of the IBT constitution, Morgan was vested with all powers of Local 786's executive board for the duration of trusteeship, including the power to appoint and remove union trustees of any benefit fund negotiated by Local 786. (*Id.* ¶ 17.) By letter dated July 24, 2019, Morgan notified the defendants that he was removing Blevins, Fisher, Rizzo, and Yauger as union trustees of the 786 Funds and replacing them with Thomas Conelias. (*Id.* ¶ 18.) By letter dated July 25, 2019, the defendants refused to accept the removal of the union trustees and the appointment of Conelias based on their February 28, 2019 amendments to the trust agreements for the funds. (*Id.* ¶¶ 19-20.)

On more than one occasion, Local 786 attempted to resolve this matter with the defendants to no avail. (*Id.* ¶ 21.) Local 786 brought this action for breach of fiduciary duty under sections 404(a)(1)(A), (B) and (D) of ERISA and filed a motion for preliminary injunctive relief to compel removal of the union trustees from the funds. (*Id.* ¶ 23; dkt. 11.) Defendants have moved to dismiss. (Dkt. 19.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences

3

therefrom in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); see also *Johnson* v. *City of Shelby*, 574 U.S. 10, 135 S. Ct. 346 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. *See Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of USA, Inc.,* 549 F.3d 1079, 1085–86 (7th Cir. 2008). "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Turnell* v. *CentiMark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015). If the movant makes the required threshold showing, then the court moves on to the second stage and considers: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties," *i.e.* the public interest. *Id.* at 662. The Court balances the

4

potential harms on a sliding scale against the movant's likelihood of success. *Foodcomm Int'l* v. *Barry*, 328 F.3d 300, 303 (7th Cir. 2003). The greater the movant's likelihood of success, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Id.*

## ANALYSIS

### I. Motion to Dismiss

Defendants seek to dismiss Local 786's one-count complaint for breach of fiduciary duty under ERISA, arguing that it has not pleaded sufficient facts to show that the amendments to the trust agreements, or the rejection of Conelias as the replacement union trustee, breached any fiduciary duties. Defendants also claim that their actions were in a settlor rather than a fiduciary capacity. Defendants further assert that Local 786 lacks standing to bring this claim under ERISA. Local 786 responds that the amendments to the trust agreements entrench the union trustees in their positions and were completed in a fiduciary rather than settlor capacity. Local 786 also proclaims that it has standing.

#### A. Standing

ERISA provides that a "civil action may be brought ... by a participant, beneficiary or fiduciary." 29 U.S.C. § 1132(a)(2). Local 786 argues that it has standing under this statute as a fiduciary. As described above, the Seventh Circuit has held that a party is a fiduciary where, among other things, it has authority to select and retain plain administrators. *Leigh*, 727 F.2d at 133; *see also Licensed Div. Dist. 1 MEBA/NMU* v. *Defries*, 943 F.2d 474, 477–78 (4th Cir. 1991) (finding that "a union claiming such authority [to appoint and remove] has standing to sue as a fiduciary to the extent that it challenges, as violative of ERISA or the terms of the plan, any act or practice which pertains to the appointing and replacing of trustees").

Defendants argue that following the amendments they made to the trust agreements, Local 786 no longer had authority to appoint or remove any trustees. (Dkt. 20 at 10-11.) But of

course it is those amendments that Local 786 is challenging. It would be perverse to permit defendants to deprive a plaintiff of standing through the very act they seek to challenge as unlawful.

Defendants also argue that the provision of ERISA under which Local 786 sues, Section 502(a)(2), provides a remedy only for losses to the plan, and that Local 786 does not plead any financial loss to the plan. (*Id.* at 5.) But the Seventh Circuit has held that "plaintiffs are not required to show that the trust lost money as a result of [a fiduciary's] alleged breaches of fiduciary duties." *Leigh*, 727 F.2d at 122; *see also Mira* v. *Nuclear Measurements Corp.*, 107 F.3d 466, 472 (7th Cir. 1997) ("we are convinced that it would be improper to impose liability under ERISA absent a showing of either economic harm to the plan *or* a breach of the duty of loyalty") (emphasis added). Thus the court concludes that Local 786 has standing to bring its claims.

## B. Entrenchment

Although the Seventh Circuit has not addressed the issue of entrenchment, several courts have held that ERISA fiduciaries can violate their duties of loyalty and prudence by entrenching themselves in their positions. *See Levy* v. *Local Union No. 810,* 20 F.3d 516, 519 (2d Cir. 1994). As the Second Circuit explained, "trust agreements that excessively protect benefit plan trustees from removal violate ERISA's fiduciary mandates because they insulate trustees from responsibility for failure to carry out their fiduciary duties." *Id.* The Department of Labor also has expressed concern with entrenchment, stating that fiduciaries "should be subject to effective oversight on behalf of plan participants and beneficiaries."[4] Department of Labor, Pension &

---

[4] Although DOL opinion letters are not binding on the court, they represent "the views of the agency charged with implementing ERISA, [and] are at least 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Marcella* v. *Capital Dist.*

Welfare Benefits Opinion Letter 85–41A, December 5, 1985; *see also Mobile, Alabama-Pensacola, Fla. Bldg. & Const. Trades Council* v. *Daugherty*, 684 F. Supp. 270, 278 (S.D. Ala. 1988).

In general, the question of whether fiduciaries are unduly entrenched turns on "whether a fund's governing provisions permit the termination of their fiduciaries' services on reasonably short notice under circumstances so the plan would not become locked into an arrangement that may become disadvantageous to the benefit fund." *Local 553, I.B.T.* v. *Local 803 Pension Fund*, 409 F. Supp. 3d 255, 257 (S.D.N.Y. 2019). Excessive entrenchment is improper "even in the absence of wrongdoing by particular trustees." *Partenza* v. *Brown,* 14 F. Supp. 2d 493, 499 (S.D.N.Y. 1998).

The amendments to the various trust agreements at issue here each provide that the union trustees "may be removed, with or without cause, at any time, by a majority" of the other union trustees. (*E.g.*, dkt. 10-7 at 15.) Similar provisions apply to management trustees. There are no time limits on any trustee's term.

Courts have found that both placing removal and appointment authority solely in the hands of incumbent trustees and allowing trustees to serve indefinitely are indicia of excessive entrenchment.[5] In *Levy*, the Second Circuit held that amendments adopted in anticipation of a local union's being placed under a trusteeship were overly entrenching where they provided the trustees could be removed only by the "duly elected" local executive board, as opposed to an international trustee, and only for malfeasance. *Levy*, 20 F.3d at 518. The amendments further

---

*Physicians Health Plan Inc.*, 293 F.3d 42, 48 (2d Cir. 2002) (quoting *Bragdon* v. *Abbott*, 524 U.S. 624, 642, 118 S.Ct. 2196, (1998)).

[5] While not at issue here, provisions permitting removal only for just cause, malfeasance, or the like also have been struck down as too entrenching. *Partenza*, 14 F.Supp.2d at 499; *Local 553, I.B.T.* v. *Local 803 Pension Fund*, 409 F. Supp. 3d 255, 257 (S.D.N.Y. 2019).

7

specifically provided that no international trustee "shall have any voice or vote in the selection or removal of a [fund] Trustee" and that "in the event that there shall be no [elected] Executive Board in office . . . the predecessor Trustee shall remain in office until such time as his successor shall be elected [by an elected Executive Board]. . ." *Id.* at 518. The court held that the amendments were overly entrenching because they made the trustees immune from removal during the international trusteeship (the validity of which was not in question). *Id.* at 520.

Similarly, in *Masino* v. *Montelle*, No. 05-cv-2447, 2005 WL 8159617, at *9 (E.D.N.Y. July 14, 2005), the court held that plan amendments were overly entrenching because they permitted trustees to "serve indefinitely, and the beneficiaries and International Trustee lack[ed] the power to replace them." Removal and appointment authority instead rested with the incumbent trustees, thus allowing them "to perpetuate themselves and their designees in office." *Id.*

In contrast, in *Fuchs* v. *Allen*, 363 F. Supp. 2d 407, 411 (N.D.N.Y. 2005), the court held that amendments were proper where they provided that in the event a local was placed into trusteeship, "the removal or appointment of any Union Trustee was to be made by a majority vote . . . of the Pension Fund participants." And in *Joint Council 18* v. *New York State Teamsters Council Health & Hosp. Fund*, 903 F.2d 919, 921 (2d Cir. 1990)—the case most helpful to defendants—the Second Circuit upheld amendments providing that union trustees were to serve four-year terms unless they were removed "as required by law or by unanimous vote of the remaining existing [union] Trustees." In contrast to this case, however, replacement trustees were to be selected by the existing union trustees from nominees put forward by three union councils rather than solely by the trustees themselves. *Id.*

Here, the court finds that the defendants' amendments to the trust agreements overly entrench the union trustees by allowing them to serve indefinite terms, appoint their successors, and restricting their removal to other union trustees.

### C. Capacity

Defendants also argue that their amendments to the trust agreements were made in a "settlor" capacity as opposed to a fiduciary capacity, thus the amendments are not governed by ERISA. This argument derives from the principle that "ERISA does not create any substantive entitlement to . . . [any] kind of welfare benefits." *Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U.S. 73, 78, 115 S. Ct. 1223, 1228 (1995). As such, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.* Accordingly, the Seventh Circuit has "consistently held that the fiduciary duties owed to participants and beneficiaries under ERISA apply only to the administration of a plan, not to its formation, amendment, or modification." *Milwaukee Area Joint Apprenticeship Training Comm.* v. *Howell*, 67 F.3d 1333, 1338 (7th Cir. 1995).

In contrast to such so-called settlor acts, ERISA defines a fiduciary as a person who, as relevant here, "exercises any discretionary authority or discretionary control respecting management of [a welfare benefit] plan . . . [or] has any discretionary authority or discretionary responsibility in the administration of such [a] plan." 29 U.S.C. § 1002(21)(A).

The parties primarily cite district court cases outside this circuit in arguing whether amendments to the way trustees may be removed and appointed implicate fiduciary duties. (Dkt. 20 at 8-10; dkt. 45 at 9-10.) But the Seventh Circuit held long ago that parties are "fiduciaries to the extent that they perform [] fiduciary functions in selecting and retaining plan administrators." *Leigh* v. *Engle*, 727 F.2d 113, 133 (7th Cir. 1984). The court in *Leigh* relied on interpretive

9

guidance from the Department of Labor stating that where a board of directors is responsible "for the selection and retention of plan fiduciaries . . . [the] members of the board of directors exercise discretionary authority or discretionary control respecting management of such plan and are, therefore, fiduciaries with respect to the plan." *Id.* At 133–34 (citing ERISA Interpretative Bulletin 75–8, 29 C.F.R. § 2509.75–8 (1983)). *Leigh* thus settles the issue.[6]

Defendants rely principally on *Fuchs*, which held that fund trustees acted in a settlor capacity when they made amendments to plan documents that affected the way they could be removed and appointed in anticipation of a local union's being placed under trusteeship. *Fuchs*, 363 F. Supp. 2d at 407. The court in *Fuchs* construed Second Circuit precedent to hold that plan amendments are only fiduciary acts to the extent they "affect the financial integrity (i.e., management and administration, pool of assets) of the Funds." *Id.* at 417. *Fuchs*, of course, is not binding on this court. It also is distinguishable because it did not involve entrenchment as against plan participants. Rather, as described above, the amendments at issue in *Fuchs* provided that in the event the local union was placed into trusteeship, "the removal or appointment of any Union Trustee was to be made by a majority vote ... of the Pension Fund participants." *Fuchs*, 363 F. Supp. 2d at 411.

*Fuchs* was distinguished on that ground in *Masino*, which held that plan amendments were unduly entrenching where they made fund trustees "essentially immune from oversight during a valid trusteeship, as their control over the appointment of replacement trustees prevents

---

[6] Defendants cite to a trio of Supreme Court opinions that generally expanded the set of acts considered to be non-fiduciary functions, and it is true that *Leigh* pre-dates those. *Hughes Aircraft Co.* v. *Jacobson,* 525 U.S. 432, 119 S.Ct. 755 (1999); *Lockheed Corp.* v. *Spink,* 517 U.S. 882, 116 S.Ct. 1783 (1996); *Schoonejongen,* 514 U.S. 73. But none of those cases dealt with alleged entrenchment of trustees, and the Seventh Circuit has approvingly cited *Leigh* on the scope of fiduciary functions after Supreme Court cases were decided. *Baker* v. *Kingsley*, 387 F.3d 649, 663 (7th Cir. 2004) (stating that *Leigh*'s "liberal standard for fiduciary status has been reiterated in several of our subsequent decisions").

the International Trustee and the plan beneficiaries from having a voice in the management of the Funds." *Masino*, 2005 WL 8159617, at *10–11.

Similarly, the court in *Local 553* rejected an argument that fund trustees acted in a settlor capacity in amending trust agreements in a putatively entrenching manner. *Local 553*, 409 F. Supp. 3d at 258. The court reasoned that the relevant question was not whether "the *act* of restating the relevant trust agreements was unlawful, but rather that the [amendments] themselves violate ERISA as a matter of law." *Id.* That reasoning is sound: to focus on the act of amendment rather than the substance of the amendments would be pure formalism and, taken to an extreme, would permit trustees to amend plan documents to disclaim their duties of loyalty and prudence. That cannot be the rule.

## II. Preliminary Injunction

### A. Likelihood of Success on the Merits

For the reasons discussed above, Local 786 has a high likelihood of success on the merits.

### B. No Adequate Remedy at Law and Irreparable Harm

The "continuance of any trustees serving contrary to the wishes . . . of the appointing authority inherently causes irreparable injury." *Partenza,* 14 F. Supp. 2d at 498. Permitting trustees to remain in their positions without proper authorization would deprive the appointing authority of its "crucial ability to oversee the work of its appointed Trustees and to intervene quickly pursuant to its own fiduciary obligations if it should conclude that a sitting Trustee's actions are not in the best interest of the Funds." *Demopoulos* v. *Whelan*, No. 17-CV-5823, 2017 WL 4233081, at *3 (S.D.N.Y. Sept. 25, 2017). Confusion as to the identity of the appropriate trustees can also engender mismanagement of fund assets and can damage the reputation of a

11

union. *Id.* The court thus concludes that Local 786 has shown irreparable harm and the inadequacy of any remedy at law.

        **C.**      **Balance of Hardships and Public Interest**

Defendants' arguments all relate to the potential to harm the funds, rather than to themselves. (Dkt. 18 at 15–16.) The balance of hardships therefore favors Local 786, and defendants challenge only the effect on the public interest. Defendants principally assert that granting the preliminary injunction could cause the funds irreparable harm because it would make them susceptible to being merged with the funds established for members of Teamsters Local 731, which defendants allege are financially infirm. (*Id.* at 2-3.) Since the court has held in the related case that the trusteeship of Local 786 is invalid, however, it is undisputed that there is no longer a material risk of a merger.

## CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is denied and Local 786's motion for a preliminary injunction to void the amendments and remove the union trustees is granted.

Date: October 6, 2020

                                                        U.S. District Judge Joan H. Lefkow